La Rivière v. La Rivière.

LA RIVIERE *et al.* v. LA RIVIERE *et al.*, *Appellants.*

1. **Practice:** INSTRUCTION. An instruction on the part of defendant which clearly requires the jury to determine a disputed question of identity cures an error in one for plaintiff which assumes such identity.

2. **Indian Marriage.** It is not necessary to the validity of a marriage, according to the custom of the Ponca Indians, that it be actually contracted on the territory set off to or occupied by them.

3. **Ejectment:** DEFENDANT NOT IN POSSESSION. In an ejectment suit it is error to render a judgment for damages, rents and profits against a defendant who never was in possession.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED as to J. A. La Rivière.

REVERSED as to M. Badeau.

*A. J. P. Garesché* for appellants.

(1) The action of ejectment being purely a possessory one, the verdict against Badeau is clearly wrong, there being no proof whatever that he was in possession, and positive evidence by La Rivière that he was not. True, by the statute of ejectment, Badeau in right of his wife could claim to be made a co-defendant. But this is only declaratory of the common law which conceded the right of the landlord to be let into the defense. But its exercise is left to the owner's option. *Schuyler v. Marsh*, 36 Barb. 352; *Allen v. Dunlap*, 42 Barb. 585; *Pope v. Dalton*, 31 Cal. 218; *Hunich v. Deringer*, 32 Cal. 491; *Williamson v. Doe*, 7 Blackf. 12; *Edgerton v. Clark*, 20 Vt. 268; *Allen v. Ransom*, 44 Mo. 266; *Bledsoe v. Simms*, 53 Mo. 305; *Hunt v. Thompson*, 61 Mo. 148; *Wilson v. Garaghty*, 70 Mo. 518. But no reason exists why they should be mulcted in costs. R. S., sec. 1018. (2) Local law determines the validity of a marriage. Hence, clearly, the court erred in its refusal of defendant's instructions that, to establish the validity of a Ponca marriage, it devolved on plaintiffs to prove that it was contracted on Ponca territory. (3) The court should have given the instruction that, if among the Poncas there existed a marriage ceremonial, then, for the legitimacy of plaintiffs, it should be proved that the marriage of their parents was in conformity with that ceremonial. Captain Joseph Labarge, plaintiffs' witness, proved that there was such a ceremonial, described it, and testified that among Indians, as among civilized people, there were unions without it, but such were not marriages. (4) As defense denied identity of Antoine, plaintiffs' father, with the

Antoine, brother of defendants and son of Marie La Rivière, the court has no right to assume it as it did in its fourth instruction for plaintiffs. (5) The former depositions of Des Loge and Le Clair should have been admitted.

*I. D. Foulon* for respondents.

BLACK, J.—This is an action of ejectment for one-fifth of the described premises ; the case was here before. 77 Mo. 513.

Both parties claim title under Mary La Rivière, who died in 1872, leaving five children, the defendant John La Rivière being one, and Antoine was another. The plaintiffs sue as the heirs and children of Antoine, by a marriage with a half-breed Ponca Indian woman. The evidence shows, or is to the effect, that Antoine went from St Louis to the Indian country, now northern Nebraska, in 1852 or 1856. One witness says in unqualified terms that Antoine was then with the Ponca Indians and that he married a daughter of one Michael Cerre. Captain Lebarge, who knew Antoine well, says the last time he saw Antoine he was at the Ponca agency with Cerre, "father of his squaw." Other evidence shows that in 1859, Antoine was not living on the Indian reservation, but was living with this woman at a place not far from it. She died in 1872, and he was killed by the Indians in 1873. There is much evidence to the effect that during the time from 1859 on to her death, they lived together as man and wife, raised a family to which he seems to have been devoted, and that he in all respects treated and spoke of her as his wife.

For the plaintiffs, the court instructed the jury "that if they believe from the evidence that Antoine La Rivière, the son of Mary La Rivière, was married to the mother of plaintiffs in the Indian country, according to the Indian customs, and that from the time of

his said marriage with the mother of plaintiffs he held her out to the world as his wife and lived with her as such and that plaintiffs are the issue of such marriage; that both before and after the death of their mother he treated plaintiffs as his lawful children, then his marriage was a valid marriage and the jury must find for the plaintiffs."

But the court refused the following instruction asked by defendants: "That a marriage according to the custom of the Ponca Indians, to be valid, must have been contracted in the territory of the Ponca Indians, and without such proof has been made, the marriage is not legal."

1. The objection made to the plaintiffs' instruction is, that it assumes that the father of the plaintiffs was the same person as the Antoine who was the brother of defendants. For the defendants, the court told the jury that, to find for the plaintiffs, it must be established by the evidence, "that Antoine La Rivière, through whom the plaintiffs claim, is identically the same Antoine La Rivière, formerly of St. Louis," etc. This direction of the court disposes of the objection, for it in unqualified terms requires the jury to determine the disputed question of identity.

2. The validity of the Indian marriage did not depend upon the fact that it was actually contracted on the territory set off to or occupied by Ponca Indians. This court used this language in the case of *Boyer v. Divelly*, 58 Mo. 529: "Although located within the state lines, yet so long as their tribal customs are adhered to, and the federal government manages their affairs by agents, they are not regarded as subject to state laws, so far at least, as marriage, inheritance, etc., are concerned." It cannot be said that the moment these Indians happen to be off their reservation, they lose the tribal customs. There was therefore no error

in refusing the instruction before set out and asked by the defendants.

3. The other instructions given on the one side and the other are in substance the same as when the case was here before; they present the case fairly and cover the entire case made by the pleadings and evidence on both sides, and it is, therefore, useless to consider the other refused instructions.

4. Michael Badeau, who married a sister of the defendant, John La Rivière, is a defendant in this suit. There is no evidence that he was in possession of the property at the commencement of this suit, or that he received any of the rents arising therefrom. On the contrary, all the evidence is that defendant John La Rivière alone had possession and that he received and used the entire rents arising therefrom, though his sister, the wife of Badeau, was a tenant in common with him. The judgment, however, is against him as well as Rivière, for possession, damages, monthly rents and costs of this suit, and of this judgment he complains. Ejectment is a possessory action and must be brought against the actual occupant. *Shaw v. Tracy*, 95 Mo. 532. Badeau denied possession, and there is no evidence that he was or ever had been in possession of the property. As to him the judgment is reversed, but it is affirmed as to John La Rivière. Respondents will pay the costs of this appeal.

SHERWOOD and BARCLAY, JJ., not sitting; the other judges concur.