BANKS et al., Appellants, v. GALBRAITH et al.

### Division Two, May 9, 1899.

1. **Will**: PRETERMITTED HEIRS: UNDUE INFLUENCE. In a suit by plaintiffs to have themselves declared pretermitted heirs under a will, an allegation that the will is the result of undue influence on the part of one of the defendants, should be stricken out.

2. **Marriage**: BARGAIN FOR INDIAN WOMEN. Where an Indian was brought by her parents to Missouri, and traded by them to testator for certain presents, and no form of marriage was gone through by them in this State, and she lived in his house for a few years and worked for him and cohabited with him in Missouri and nowhere else, and then went away, she was not legally married to him.

3. ———: ———: PRETERMITTED HEIR: PEREMPTORY INSTRUCTION. And the offspring of such cohabitation is not an heir of such testator. And the court properly peremptorily instructed the jury that they were not entitled to share in his estate.

4. ———: MARRIAGE ACCORDING TO INDIAN CUSTOM. Before a marriage, which is not legal either according to the common law or statutory requirements, can be said to be legal according to the Indian custom, it must appear that it was entered into in the Indian country. If the whole social relation was begun, continued and ended within this State, then it must have been in accordance with the requirements of the common law or statutory regulations before it can be legal.

5. ———: DEFINITION. In this State marriage is a civil contract by one man and one woman competent to contract, whereby they are mutually bound to each other so long as they both shall live, for the discharge to each other and the community of the duties and obligations which flow by law from such relation.

*Appeal from Holt Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

T. C. DUNGAN for appellants.

(1) The court erred in admitting the evidence of witnesses G. W. Kelly, Arch Thornhill, Dr. H. M. Wilson, and Jas. Dyche over the objection of the plaintiffs, of the statements of the deceased, William Banks, in his lifetime as to Joe Banks' illegitimacy. The testimony, as well as the statements of the father, is inadmissible to illegitimate or bastardize a child; while the admission of its legitimacy, or its recognition and treatment as a child, is strong evidence of the existence of a valid marriage with the mother. Jackson v. Jackson, 30 Atl. Rep. 752; Bank v. Sharpe, 33 S. W. 676. (2) The trial court seemed to hold and indicate that the

civil laws of the State extended to the Indian tribes and their marital relations, when, in fact, the State laws have no force whatever over Indians maintaining tribal relations. U. S. v. Shanks, 15 Minn. 369; U. S. v. Payne, 4 Dill. 389; Kansas Indians, 72 U. S. 737; Cherokee Nation v. Georgia, 30 U. S. 1; Worcester v. Georgia, 31 U. S. 515; U. S. v. Kagama, 118 U. S. 375; Johnson v. Johnson, 30 Mo. 72; Boyer v. Dively, 58 Mo. 510; LaRiviere v. LaRiviere, 73 Mo. 512; s. c., 97 Mo. 80. (3) The rules of Indian descent are *Partus* that which is brought forth or born; *Partus sequiter patrem*—the offspring follows the father. 2 Blackstone, Com., 390; U. S. v. Sanders, 1 Hempst. 486; Ex parte Reynolds, 5 Dill. 483; Andover v. Canton, 13 Mass. 551; Com. v. Aves, 18 Pick. 222. (4) "An Indian tribe, recognized as such by the United States government, is to be considered as a separate community or people, capable of managing its own affairs, including the domestic relations, and those persons belonging to the tribe who are recognized by the customs and laws of the tribe as married persons, must be so treated by the courts, and the children of such marriages can not be regarded as illegitimate." Earl v. Godley, 42 Minn. 361; Kansas Indians, 72 U. S. 737; Kobogum v. Jackson Iron Co., 76 Mich. 498; Sutton v. Warren, 10 Met. 452; Boyer v. Dively, 58 Mo. 510; LaRiviere v. LaRiviere, 77 Mo. 512; s. c., 97 Mo. 80. Indians are not citizens or members of the body politic, but are considered as independent tribes governed by their own laws and usages. Holden v. Joy, 84 U. S. 211; Goodell v. Jackson, 7 Johnson, 290. (5) A marriage, according to the custom of an Indian tribe, need not be contracted or consummated in the territory of that tribe, in order to be valid and binding. Boyer v. Dively, 58 Mo. 529; LaRiviere v. LaRiviere, 97 Mo. 80; s. c., 77 Mo. 512. (6) There was ample evidence direct, positive and circumstantial of a valid

marriage between William Banks and the Indian woman, according to the Indian custom, and according to nature and the common law; and an abundance of the same kind of evidence as to the birth of a legitimate child, Joseph Banks, the issue of such marriage. In fact the great preponderance of the evidence went to sustain plaintiffs' case and their contention, and the jury should have been allowed to have passed upon the issues submitted. Wilson v. Board, 63 Mo. 137; Bueschong v. Gas Co., 73 Mo. 219; Noeninger v. Vogt, 88 Mo. 589; Finch v. Ulman, 105 Mo. 257; Charles v. Patch, 87 Mo. 463; Roulsong v. Railroad, 45 Mo. 237; Buck v. Railroad, 108 Mo. 186; Larson v. Railroad, 110 Mo. 238; Burger v. Railroad, 112 Mo. 248; State ex rel. v. Goetz, 131 Mo. 675; Lee v. Geo. Knapp & Co., 137 Mo. 385; Meister v. Moore, 96 U. S. 76; Bank v. Sharpe, 33 S. W. 676; Simmons v. Simmons, 39 S. W. 639. (7) The marriage of William Banks and Wah-rush-ka-me must have been entered into and perfected in the Indian country, according to the Indian custom in order to constitute it a valid and binding marriage between them, yet if they actually lived and cohabited together in this State as husband and wife, and the child Joe Banks was born during such cohabitation, then said Joe Banks would be the legitimate child and heir of said William Banks, and capable of inheriting from him, under our law, if the trial court as a matter of fact, found, deemed, declared and decreed such marriage null and void in law. R. S. 1825, p. 323, sec. 4; R. S. 1889, sec. 4475; Linececum, 4 Mo. 441; Buchanan v. Harvey, 35 Mo. 276; Dyer v. Brannock, 66 Mo. 391; Johnson v. Johnson, 30 Mo. 72; Green v. Green, 28 S. W. 752; Leonard v. Braswell, 36 S. W. 685.

John Kennish and S. F. O'Fallon for respondents.

(1) How "the rules of Indian descent" can control the statute or rules of descent governing citizens of the State of

Missouri, is an anomalous proposition.   One swallow does not constitute a spring—neither does the ferrying of a single squaw across the Missouri constitute a "tribal relation" in Missouri.   Johnson v. Johnson's Adm'r, 30 Mo. 72; LaRiviere v. LaRiviere, 77 Mo. 512.   (2)   Whether the offspring follows the father or mother, the father must be known. This is a case of *nullius filius*, the father not known.   (3) An adulterous connection however long continued never ripens into marriage.

GANTT, P. J.—This is an action by plaintiffs to establish their rights as pretermitted heirs of William Banks, Sr., deceased, late of Holt county, Missouri.

The record discloses substantially these facts:   That William Banks, Sr., deceased, lived at Holt county, Missouri, from about the year 1840 until the sixth day of April, 1895, when he died testate, having made a will disposing of all his estate to the defendants, without having in any way mentioned the plaintiffs or their father in the will.   That in 1840 said William Banks, deceased, settled on the east bank of the Missouri river in Holt county, and established a trading point for the sale of goods, and operated a ferry across the Missouri river between his trading post and a landing known as Iowa Point, in Kansas.   Tribes of Indians, known as the Foxes, Sacs and Iowas, occupied a reservation in the then Territory of Kansas which included the place of said ferry landing on that side of the river.   Banks continued in business at his trading post on the Missouri side, doing a general mercantile business and trading with both white people and Indians as his customers, operating the ferry and carrying on a farm and keeping store.   In 1844, after he had been in business there about four years, he bought a woman called Wa-rush-ka-me of her parents and paid for her with goods, and maintained illicit relations with her for about three years, during which time she had a child, who is called Joseph

Banks in the record of the proceedings in this case, and under whom the plaintiffs in this suit claim as heirs at law a portion of the estate of William Banks, deceased, by descent or inheritance. This woman was a member of the Iowa tribe of Indians, and lived with her parents on the Indian reservation in Kansas Territory, opposite to where William Banks lived and kept his trading point. After Banks bought this woman she divided her time between living with the tribe and with Banks—going back and forth. Her parents brought her over and delivered her to Banks and received the consideration for her at his place of business in Missouri. After she had visited him occasionally, remaining with him such length of time as suited her inclination, she left him, or he put her away, sent her home, where she remained until her death. There were other squaws that came across the river and dwelt with Banks and his partner for illicit purposes, and some of the witnesses say no one knew who sired their children. Shortly after Banks sent Wa-rush-ka-me home, or broke off his illicit relations with her, he appropriated another Indian woman called Jane, who was the mother of William Banks, Jr., one of the defendants, and this woman lived with Banks until she died, about 1854. So far as the present inquiry is concerned, it is not necessary to determine whether Banks, senior, was legally married to the last woman or not, or whether defendant, William Banks, Jr., and his children, who are devisees under the will, are his legitimate heirs or not. The question is whether Joseph Banks is a legitimate child of William Banks, Sr., and that depends upon whether his reputed father, William Banks, was legally married to his mother, Wa-rush-ka-me. Of course, if the plaintiffs succeed in establishing their legitimacy, so that they would be regarded as legal heirs of William Banks, Sr., deceased, it would then be necessary for defendant, William Banks, Jr., and his children to establish their heirship, and in that event plaintiffs would take half the

whole estate, and the remaining half would be disposed of under the will, between Miss Galbraith and William Banks, Jr., and his children, defendants.

The jury under the instructions of the court found for defendants and plaintiffs appeal.

I. No error was committed in striking out so much of plaintiffs' petition as charged undue influence on the part of Miss Galbraith. That allegation is utterly inconsistent with the other averments of the execution of the will and the failure to mention plaintiffs or to provide for them. Plaintiffs sue as pretermitted heirs and not to set aside the will. Moreover if permitted to remain it would have been the commingling of two different causes of action in one count. It was very properly eliminated.

II. The real question in this case is the propriety of the action of the circuit court in giving a peremptory instruction to the jury to find for defendants.

It was shown beyond peradventure that William Banks, Sr., did not go through the form of a marriage with Wa-rush-ka-me in the Indian country. By all the witnesses it was established that she was a widow and came with her parents to the trading post of William Banks, Sr., in Holt county, Missouri, and he, then and there, gave her relatives some presents and she lived in his house, cooked for him and the evidence tends to show cohabited with him in Missouri and nowhere else. There is not a syllable of evidence of any witness to an agreement in the present tense between William Banks, Sr., and Wa-rush-ka-me that they would be husband and wife for life.

The only contract, if any, shown by the evidence was a bargain between Banks and the parents of Wa-rush-ka-me for the prostitution of the woman for such time as Banks chose to use her.

It is too plain for discussion that in Missouri at least such an arrangement did not constitute a lawful marriage

either at common law or according to regulations provided by our statutes.

The plaintiffs invoke former decisions of the court to the effect that if William Banks, Sr., was married to Wa-rush-ka-me in the Indian country according to the Indian customs and that from the time of said marriage he held her out as his wife and lived with her as such and Joe Banks, their father, is the issue of such marriage and was treated by William Banks, Sr., as his lawful child, then such Indian marriage was a lawful marriage. [Johnson v. Johnson, Adm'r, 30 Mo. 72; Boyer v. Dively, 58 Mo. loc. cit. 529; LaRiviere v. LaRiviere, 77 Mo. 512.] But it will be observed that in each of said cases and in the subsequent opinion of this court in LaRiviere v. LaRiviere, 97 Mo. 80, the fact that the marriage was in the Indian country and according to the Indian customs was the controlling fact. In neither of those cases was it asserted that an Indian woman could leave her tribe in the Indian country and come into Missouri and form an adulterous and meretricious intercourse with a citizen of Missouri and that such a connection would constitute marriage either according to the common law or the regulations prescribed by our statutes.

In this State marriage is a civil contract by one man and one woman competent to contract whereby they are mutually bound to each other so long as they both shall live, for the discharge, to each other and the community, of the duties and obligations which flow by law from such relation (State v. Bittick, 103 Mo. 183), and such contract is not dissolvable at the will of either or both of said parties. It can only be dissolved by death or a decree of divorce by a competent court.

The cases decided by the courts sustaining marriages between white men and Indian women in the Indian country simply conform to an almost universal principle of international law, that a marriage celebrated in other States and

countries if valid by the laws of such countries are valid in this State even though the same might by the force of our laws be invalid if contracted here. But those decisions fall far short of sustaining as a lawful marriage the illicit relation shown to have existed between William Banks, Sr., and Wa-rush-ka-me. That relation must be tested by the laws of Missouri and according to our laws it was nothing more nor less than a temporary illicit cohabitation. It was not a marriage in any sense, even according to plaintiffs' own evidence and the unlawful relation was made even more conspicuous by the evidence of defendant.

The trial court correctly sustained the demurrer to the evidence. There was neither a lawful marriage nor a marriage of any kind in fact.

There is no warrant in our statute of descents for holding that the issue of such a relation can inherit from the father. The arrangement was clearly illicit in the beginning and the proofs did not show any change in the subsequent relations of the parties, but on the contrary confirmed the view that it was a mere commercial arrangement without any of the sanctity or permanence of marriage within the contemplation of the laws of Missouri by which alone it can and must be tested.

The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.