## FRANK COY, Respondent, v. THOMAS H. HUMPHREYS, Appellant.

### Springfield Court of Appeals, February 7, 1910.

1. **EVIDENCE: Husband and Wife: Public Policy: Wife Competent Witness for Husband When.** In a suit by a husband for damages on account of the alienation of the affections of his wife by defendant, it was held, on the ground of public policy, that the wife is a competent witness for the husband to show her relations with and influence of the defendant over her.

2. **HUSBAND AND WIFE: Common Law Marriage: Instructions.** In a suit for damages for alienation of the affections of wife of plaintiff, when the defense was that plaintiff had another wife by a common-law marriage, and the question submitted to the jury was whether a common-law marriage contract had been entered into between plaintiff and the other woman; it was proper to instruct the jury that when the parties assumed the relation of husband and wife, to make a valid marriage they must both have understood that neither or both of them could rescind the contract or destroy the relation.

3. ———: ———: **Unlawful Cohabitation.** When a single woman consents to unlawfully cohabit with a man generally, as though the marital relation existed between them without any limit as to the duration of such cohabitation, and actually commences to cohabit with him with that understanding; this is not sufficient in contemplation of law, to make a common-law marriage.

Appeal from Taney Circuit Court.—*Hon. John T. Moore,* Judge.

AFFIRMED.

*C. B. Sharp* and *D. F. McConkey* for appellant.

(1) The presumption of law is against vice and in favor of innocence, and good morals, and on this ground the law presumes marriage where, as in this case, the evidence shows ceremony, acknowledgment, cohabitation, the birth of children and reputation of mar-

riage. Cargile v. Wood, 63 Mo. 501; Adair v. Mette, 156 Mo. 512; Plattner v. Plattner, 116 Mo. App. 405; Imboden v. Trust Co., 111 Mo. App. 220; Meister v. Moore, 96 U. S. 76; Maryland v. Baldwin, 112 U. S. 490; Nims v. Thompson, 17 L. R. A. 847; Hynes v. McDermott, 91 N. Y. App. 451. (2) It is not necessary that both parties should intend at the time that the agreement should be binding upon them. Barnet v. Kimmell, 35 Pa. (11 Casey) 13; Imboden v. Trust Co., 111 Mo. App. 220.

*Price & Ford* for respondent.

(1) Respondent's instructions numbered two and three, defining common-law marriage, correctly set out the elements necessary to constitute such a marriage, and, when taken in connection with those given by the court on its own motion, fairly, fully and impartially present the issues to the jury, and were not prejudicial to the defendant. Banks v. Galbraith, 149 Mo. 529; Topper v. Perry, 197 Mo. 545; State v. Hansbrough, 181 Mo. 348; State v. Cooper, 103 Mo. 266. (2) After positive proof of respondent's marriage with Hettie, his present wife, the law will not presume a former marriage with Belle Hoffman from proof of cohabitaton and reputation, but will require positive proof of such former marriage. Chapman v. Cooper, 5 Rich. (S. C.) 452; Chamberlain v. Chamberlain, 71 N. Y. 423; Jones v. Jones, 45 Md. 144; Hirtchens v. Kimmell, 31 Mich. 126; Case v. Case, 17 Cal. 598; Klien v. Laudman, 29 Mo. 259; Waddingham v. Waddingham, 21 Mo. App. 609; 2 Greenleaf on Ev. (1 Ed.), sec. 461.

NIXON, P. J.—This was an action by the plaintiff, Frank Coy, commenced in the Taney Circuit Court, his petition alleging that he was married to his wife, Hettie Coy, in the year 1899, and that the defendant, Thomas H. Humphreys, being their family physician, took advantage of the confidential relations growing

out of his professional employment and alienated the affections of his wife. On a trial before a jury, the plaintiff obtained judgment for the sum of fifteen hundred dollars from which the defendant has appealed.

At the trial of the issues, the plaintiff to maintain his case introduced a voluminous mass of evidence which abundantly sustained the allegations of his petition, showing that the defendant was his family physician, that defendant took advantage of the confidential relations growing out of his professional employment and alienated the affections of plaintiff's wife. This evidence reeks with the stench of moral pollution and utter rottenness.

The defendant, to sustain the issues in his behalf, introduced another mass of evidence to show that the plaintiff had formerly resided in the Indian Territory, and while there, had contracted a common-law marriage with one Belle Hoffman from which he had never been divorced; that he had cohabited with her and held her out to the world as his wife and that there was born of such marriage one child. The defendant declined to go upon the witness stand in his own defense, virtually confessing the charges made in plaintiff's petition and setting up the bigamous marriage of the plaintiff to Hettie Coy as a defense to the action.

In reply to these charges, the plaintiff in rebuttal introduced his former paramour, Belle Hoffman, who testified that she had sustained the relation of concubine to the plaintiff in the Indian Territory, but that there was no common-law marriage between them; that this took place some ten or fifteen years prior to the institution of this suit; that since returning to the State of Missouri, they had each contracted marriages with other parties with whom they were living and raising families.

I.  At the trial, the plaintiff introduced as a witness in his behalf his present wife, Hettie Coy, who was allowed by the court to testify over the objections

of the defendant. After stating her name, she proceeded substantially as follows:

"I have been making my home with Frank Coy for the past eight years, to whom I was married in the year 1899, and Frank Coy and myself have three children, the oldest being seven years of age. Since my marriage, my health has been very poor. My physician has been Dr. Humphreys, the defendant. I have received several letters from Dr. Humphreys with his name signed to them. While he was treating me, he told me that my parts were affected and that it was necessary to have an operation; that after we were married, he would take me to St. Louis to a board of doctors and have the operation performed there. We were under a contract to get married, and it was while this contract existed that he made this statement about taking me to St. Louis for treatment. His kind treatment is what gained my affection. He always told me I was a very nice looking woman and too good to live with such a man as Frank Coy. Yes, he said I was cruelly treated. I was in love with him. We were to marry as soon as we could make our arrangements to get divorces. We had a talk about getting divorces and he told me his wife was willing for him to have a divorce any time he asked for it, and I was to try and get one as hard as I could, and he said that he would assist me all the way through and furnish the money that was needed to carry it out. As soon as we got divorces, we were to get married, but made no arrangements about what we would do with the children. From the time that he began to make these representations to me, I did not have much feeling towards Frank Coy. I was in love with Frank Coy at one time and up until I fell in love with Dr. Humphreys."

This testimony on the part of the plaintiff's wife was objected to by the defendant and its admission at the trial is assigned as error.

The case of Cramer v. Hurt, 154 Mo. 112, 55 S. W.

258, is a case bearing a remarkable resemblance in every essential respect to the present. It was a suit by a husband against a physician for damages for producing an abortion on the plaintiff's wife. The physician was permitted to testify in his own behalf concerning information which he acquired from the wife of the plaintiff while attending her in a professional 'capacity by an examination of her body and conversations with her which was necessary, according to his testimony, to enable him to treat her. BURGESS, J., delivering the opinion of the court, held that the statute concerning witnesses did not authorize his being a witness, but that under the necessities of the case, his testimony was competent. In the same case, the wife of the plaintiff was offered as a witness in his behalf, and her testimony was excluded. The Supreme Court held that her testimony was competent and should have been received. The court say: "Moreover, we think Mrs. Cramer is a competent witness in the case on general grounds of public policy, for if it be known that a married woman is a competent witness for her husband, in a suit for damages by him against a physician who produces an abortion upon her without the consent of the husband, in consequence of which her health is injured and he is deprived of her services to which he is entitled by law, and expenses are entailed upon him in her nursing and for medical treatment, it might to some extent at least put a stop to such revolting and unnatural practices." See also Schweikert v. Schweikert, 108 Mo. App. 477, 83 S. W. 1095.

The principle stated in the Cramer case—of public policy—was an ample warrant to allow the introduction of the testimony of plaintiff's wife in the present case. *"Salus populi suprema lex esto"* applies with peculiar force to this case. The marriage contract, once entered into, becomes a relation rather than a contract, and invests each party with a status towards the other and society at large, involving duties and responsibili-

ties which are no longer matter for private regulation but concern the commonwealth. And in this aspect, marriage is a civil or social institution, *publici juris,* being the foundation of the family and the origin of domestic relations of the utmost importance to civilization and social progress; hence the State is deeply concerned in its maintenance in purity and integrity. [26 Cyc., 827.] All power should be given to society to punish those moral ulcers on the body politic which corrupt its vitals and demoralize its members; and unless society shall apply sufficient remedies to repress the erotic mania displayed in this case, its most cherished and priceless institutions, the home and the family, will be destroyed. The admission of the testimony of Mrs. Coy was not error in this case.

II. Another error assigned is the giving of erroneous instructions for the plaintiff and the failure to give proper instructions for the defendant. The legal principles involved and the action of the court may be illustrated by the following instruction requested by the defendant and given, with modifications, by the court:

"Gentlemen of the jury, you are instructed that under the law there are two modes or methods by which a man and woman may become husband and wife. First. By statute, which requires a license and the performance of a ceremony by a minister of the gospel or by some officer authorized by law to perform the same. Second. By what is termed a common-law marriage, which is not necessary to be solemnized by a minister of the gospel or by anyone else authorized by law to solemnize marriages and which requires no particular form or ceremony, but that enough has to be said and done to make it a contract. And in this connection the court instructs you that if you find and believe from the evidence in this case that plaintiff, Frank Coy, and Belle Hoffman, about the year 1889, in the

Indian Territory, entered into a contract by which they assumed the relation of husband and wife for their joint lives, *and they must both understand that neither or both of them can rescind the contract or destroy the relation,* they were in contemplation of law, married."

The instruction, as requested by the defendant, omitted the clause—which was inserted by the court— as follows: "and they must both understand that neither or both of them can rescind the contract or destroy the relation."

The issue raised under the evidence was whether the relation between the plaintiff and Belle Hoffman in the Indian Territory was that of husband and wife under a common-law marriage, or whether she sustained to him during that time the relation of concubine. It was to enable the jury to discriminate between these two relations that the court inserted in appellant's instruction by interlineation the clause above quoted. When a single woman consents to unlawfully cohabit with a man generally as though the marital relation existed between them without any limit as to the duration of such cohabitation, and actually commences to cohabit with him under that understanding, she becomes his concubine, or, as it is expressed in modern times, "his kept mistress," which amounts to the same thing. [Henderson v. People, 124 Ill. 607, 17 N. E. 68.] If Belle Hoffman was his wife, he committed bigamy in marrying Hettie Coy. If she was not his wife, but his concubine as above defined he had a right to marry Hettie Coy.

The modification of the instruction by inserting the clause in dispute was authorized by many decisions of our appellate courts. [Banks v. Galbraith, 149 Mo. 529, 51 S. W. 105; State v. Cooper, 103 Mo. 266, 15 S. W. 327; Keen v. Keen, 184 Mo. 358, 83 S. W. 526.]

This is not a case where one of the parties to the common-law marriage contract is asserting its validity and asking its enforcement against the other. Both

Frank Coy and Belle Hoffman have long since repudiated any relation which they sustained in the Indian Territory and testified that there never existed any valid marriage contract between them. But the defendant—as a stranger to this relation—is setting it up in justification of his own illicit relations with the plaintiff's wife. And this, too, after he had recognized in the most explicit terms the validity of the marriage between the plaintiff and Hettie Coy as shown by letters over his own signature in which he said, *inter alia*:

"I have no right to envy him (meaning the plaintiff) that which the law makes his, but I can't help it." "With you as my wife and a quiet, pleasant home, I would be the happiest man on earth; and I will make you my wife as soon as it is in my power to do so. If Frank doesn't get a divorce this fall, I will take you where you can get a divorce as quickly as possible and marry you."

These statements show that the appellant at the time of writing these "confidential communications" did not recognize any common-law marriage as existing between Frank Coy and Belle Hoffman. Otherwise, there would have been no necessity for him to have taken such pains to insist that Mrs. Coy obtain a divorce from the plaintiff.

No doubt, the verdict of the jury in this case was not entirely out of consideration for the plaintiff, but came as an earnest protest of their honest manhood in favor of the sanctity of the home and family and decency, and against the defendant who had disgraced his membership in an honored profession and brought the blush of shame to the cheek of Virtue by his scandalous adulteries.

We find no material error in this record. The judgment was for the right party and is affirmed. All concur.