Ethel WASHINGTON, Plaintiff-Appellant,

v.

Walter WASHINGTON, Defendant-Respondent.

No. 34475.

Missouri Court of Appeals,
St. Louis District,
Division 2.

Oct. 31, 1972.

Shaw & Howlett, Charles Clifford Schwartz, Clayton, for plaintiff-appellant.

Sale & Evans, James E. Phelps, Clayton, for defendant-respondent.

SMITH, Judge.

This appeal presents the question of whether the Missouri single-act, long-arm statute (Section 506.500 [1]) can be used in a divorce proceeding to obtain personal service of a non-resident defendant who was married in Missouri.

Plaintiff's petition was filed in June, 1971 in the usual form, charging general indignities and seeking divorce, custody of the child of the marriage, child support, alimony, and attorney's fees. An affidavit for service outside of the state was also filed. In due time return was made showing personal service upon defendant by a deputy sheriff of Pulaski County, Arkansas. Defendant entered a special appearance and filed a motion to dismiss on the basis of lack of jurisdiction over the person. A hearing was held and the motion to dismiss was sustained.

The parties were married in 1964 in Missouri. Prior to that time defendant was a resident of Arkansas; plaintiff of Missouri. After the marriage the parties went to Arkansas and remained there until the separation in 1966, when plaintiff took the child and returned to St. Louis. Defendant continued to reside in Arkansas and was still a resident of Arkansas at the commencement of the divorce action and the date of service.

Plaintiff premises her contention that personal service is proper upon § 506.-500,[2] and particularly subsection 1(2). Section 451.010 provides that "Marriage is considered in law as a civil contract. . . ." But it has been pointed out that it is in a "category separate and distinct from the ordinary and usual business contracts." Heil v. Rogers, Mo.App., 329 S.W.2d 388 [4, 5]. Or as stated in Coy v. Humphreys, 142 Mo.App. 92, 125 S.W. 877, l. c. 879: " . . . The marriage contract, once entered into, becomes a relation, rather than a contract, and invests each party with a status towards the other, and society at large, involving duties and responsibilities which are no longer matter for private regulation but concern the commonwealth."

It is unnecessary to set forth the many ways in which a marriage contract differs from an ordinary business contract. It is enough to say that there are very real practical, legal and sociological differences. We therefore must determine whether it was the General Assembly's intention in

---

1. All statutory references are to RSMo 1969 (V.A.M.S.).

2. That section provides as follows:
"506.500. Actions in which outstate service is authorized
"1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
(4) The ownership, use, or possession of any real estate situated in this state;
(5) The contracting to insure any person, property or risk located within this state at the time of contracting.
"2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

enacting § 506.500 to have it apply to suits brought to dissolve the marriage contract.

■ As we stated in State ex rel. Nichols v. Fuller, Mo.App., 449 S.W.2d 11 [2]: "Sec. 506.500 did not spring into being as an original and unique concept of extra-territorial jurisdiction by our general assembly. In its essential parts it is nearly a verbatim copy of the Illinois 'single-act' statute."

The original Illinois act is virtually identical with the one enacted in Missouri in 1967 except it does not include paragraph 1(2). In 1965 the Illinois act was amended to provide one additional basis for jurisdiction: "With respect to actions of divorce and separate maintenance, the maintenance in this State of a matrimonial domicile at the time the cause of action arose or the commission in this State of any act giving rise to the cause of action." Smith-Hurd Illinois Annotated Statutes, Chapter 110, Section 17.

In enacting the Missouri law this provision of the Illinois statute was deleted. This is strong evidence that the General Assembly did not intend for the long-arm statute to apply to actions for divorce or separate maintenance. It is further evident that the place in which the marriage is contracted is of little practical importance as compared to the domicile of the parties during the marriage and after separation. It borders on the absurd to believe the General Assembly intended to permit personal jurisdiction where the marriage was contracted in Missouri, but the parties have long since left the state, and to deny it where the marriage took place elsewhere but the parties have resided in Missouri for years. The benefits to be gained by permitting deserted spouses to obtain personal service on the deserting spouse are not accomplished by looking to the place of the marriage but by reference to the domicile of the parties during the relationship.

3. It has been held that such contact is inadequate to obtain personal jurisdiction over a non-resident defendant. See Baum

We also believe the refusal of the General Assembly to pass Senate Bill No. 605 in the second regular session of the 76th General Assembly is some indication of an intent not to apply § 506.500 to divorce actions. That bill provided for adding to § 506.500 a sixth ground for personal service as follows: "(6) The living together in lawful marriage within this state, notwithstanding subsequent departure from this state, as to all obligations arising for alimony, child support, or separate maintenance if the other party to the marital relationship has continued to reside in this state."

We have been cited to no case in Missouri or elsewhere which has permitted personal service under a long-arm statute such as Missouri has, based solely on the marriage ceremony taking place in the forum state.[3] We can only conclude that paragraph 1(2) of Sec. 506.500 was not intended to apply to marriage contracts. That section does not permit personal service under the circumstances before us.

■ However, the court should not have dismissed the petition. It alleged a good cause of action, and the court could under substituted service have proceeded to adjudicate the status of the marriage in an *in rem* proceeding. Certain relief sought by plaintiff could not be granted in the absence of personal service or a voluntary appearance by defendant but that does not authorize the court to dismiss the petition and refuse to determine those matters over which it does have jurisdiction.

The court correctly decided it lacked personal jurisdiction over the defendant but erred in dismissing the petition.

The order dismissing the petition is reversed and the cause remanded for further proceedings consistent with this opinion.

DOWD, P. J., and SIMEONE and KELLY, JJ., concur.

v. Baum, 62 Misc.2d 305, 307 N.Y.S. 2d 305.