Stottlemyer, Appellant, *v.* Stottlemyer.

504

Argued January 21, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Alan N. Linder,* with him *Eugene F. Zenobi, J. Richard Gray,* and *Tri-County Legal Services,* for appellant.

*Daniel L. Carn,* for appellee.

*J. J. Blewitt,* Deputy Attorney General, Commonwealth of Pennsylvania, for amicus curiae.

OPINION BY MR. JUSTICE POMEROY, December 5, 1974:

The Pennsylvania Divorce Law requires that at least one of the parties to a marriage shall have been a "bona fide resident" of the Commonwealth for a period of one year before either party may bring an action for divorce.[1] This appeal raises the question whether such a residency requirement is valid under the Constitution of the United States.[2]

Marian Stottlemyer, the appellant, and her husband, Eugene Stottlemyer, the appellee, were domiciled in Pennsylvania until they moved to Illinois in September, 1970. In August, 1971, after the onset of marital difficulties, the Stottlemyers returned to Pennsylvania and took up separate residences there. On November 16, 1971, the appellant filed a complaint in

---

[1] Act of May 2, 1929, P. L. 1237, *as amended*, 23 P.S. §16 (Supp. 1974) provides: "No spouse shall be entitled to commence proceedings for divorce by virtue of this act who shall not have been a bona fide resident of this Commonwealth at least one whole year immediately previous to the filing of his or her petition or libel: Provided, That, if the proceedings for divorce are commenced in the county where the respondent has been a bona fide resident at least one whole year immediately previous to the filing of such proceedings, in such case, residence of the libellant within the county or State for any such period shall not be required. The libellant shall be a competent witness to prove his or her residence."

[2] The constitutionality of state residency requirements in divorce actions has been upheld in the following cases: *Sosna v. Iowa*, 360 F. Supp. 1182 (N.D. Iowa 1973), probable jurisdiction noted, 415 U.S. 911, 39 L.Ed.2d 465 (1974) (one year), *affirmed*, January 14, 1975, 419 U.S. 393, 42 L.Ed. 2d 532; *Shiffman v. Askew*, 359 F. Supp. 1225 (M.D. Fla. 1973), *affirmed sub nom. Makres v. Askew*, 500 F.2d 577 (1974) (six months); *Whitehead v. Whitehead*, 53 Hawaii 302, 492 P.2d 939 (1972) (one year); *Davis v. Davis*, 297 Minn. 187, 210 N.W.2d 221 (1973) (one year); *Ashley v. Ashley*, 191 Neb. 824, 217 N.W.2d 926 (1974) (one year); *Porter v. Porter*, 112 N.H. 403, 296 A.2d 900 (1972) (one year); *Coleman v. Coleman*, 32 Ohio St. 2d 155, 291 N.E.2d 530 (1972) (one year); *Place v. Place*, 129

divorce against the appellee in the Court of Common Pleas of York County. From the averments of the complaint it is apparent that neither Marian Stottlemyer, the plaintiff, nor her husband had resided in Pennsylvania for one full year immediately prior to the commencement of the action.

Appellee filed preliminary objections asserting that because the residency requirement of the Act of 1929, *supra* n.1, had not been met, the court lacked jurisdiction over the cause of action. The trial court sustained the objections and dismissed the action. The Superior Court affirmed, per curiam.[3] We granted allocatur because of the important constitutional questions presented.[4]

Appellant makes essentially two arguments in support of her position that the residency requirement is invalid. The first is that the statutory classification, by distinguishing between those domiciliaries who have

Vt. 326, 278 A.2d 710 (1971) (six months) ; *Sternshuss v. Sternshuss*, 71 Misc. 2d 552, 336 N.Y.S.2d 586 (1972) (one year).

On the other hand, such residency requirements have been held unconstitutional in the following cases: *Larsen v. Gallogly*, 361 F. Supp. 305 (D. R.I. 1973) (two years) ; *Mon Chi Heung Au v. Lum*, 360 Supp. 219 (D. Hawaii 1973) (one year) ; *Wymelenberg v. Syman*, 328 F. Supp. 1353 (E.D. Wis. 1971) (two years) ; *State v. Adams*, 522 P.2d 1125 (Alaska 1974) (one year) ; *Fiorentino v. Probate Court*, 310 N.E.2d 112 (Mass. 1974) (one year). No claim is made that the residency requirement violates Art. 1, §11 of the Pennsylvania Constitution.

[3] Judge HOFFMAN filed a dissenting opinion in which Judge SPAULDING joined.

[4] Appellee has moved for dismissal of this appeal on the ground of mootness. While it is true that this appellant's residence in the state has matured so as to comply with the statute, the problem is a recurring one, and appellate review of any such case within the one year residency period is unlikely. We will therefore not dismiss. See *Roe v. Wade*, 410 U.S. 113, 35 L.Ed.2d 147 (1973) ; *Moore v. Ogilvie*, 394 U.S. 814, 23 L.Ed.2d 1 (1969) ; *Wiest v. Mt. Lebanon School District*, 457 Pa. 166, 320 A.2d 362 (1974).

lived in the state for one year and those who have not, violates her right to the equal protection of the laws in that it impedes her right of interstate travel and is not necessary to promote any compelling state interest. Appellant's second argument is that the statute infringes her right to due process of law by denying her access to the courts for the purpose of obtaining a divorce. We are unable to agree, and will therefore affirm.[5]

## I.

Appellant's first challenge to the constitutionality of the residency requirement is based upon her right to the equal protection of the laws. At the outset, it is important to bear in mind that the equal protection clause has never stood for the absolute proposition that states may not classify individuals for different treatment. Traditionally, state statutory classifications have been upheld if they "bear some rational relationship to a legitimate state end. . . ." *McDonald v. Board of Election,* 394 U.S. 802, 809, 22 L.Ed.2d 739, 745 (1969). See also *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 55, 36 L.Ed.2d 16, 56 (1973); *McGinnis v. Royster,* 410 U.S. 263, 270, 35 L.Ed.2d 282, 288-89 (1973). In recent years, however, classifications which either are based upon certain suspect criteria or are violative of certain fundamental rights have been subjected to a stricter standard of review; such classifications have been upheld only if found necessary to promote a compelling state interest.[6]

---

[5] The Commonwealth of Pennsylvania, as amicus curiae, has submitted a brief in support of the constitutionality of the residency requirement.

[6] For discussions of the "rational relationship" and "compelling state interest" tests, *see* the dissenting opinion of Mr. Justice HARLAN in *Shapiro v. Thompson,* 394 U.S. 618, 655, 22 L.Ed.2d

Thus, the threshold inquiry in the determination of this case, as in any case in which a denial of equal protection is charged, is which standard of review is to be applied.

It is appellant's position that the residency requirement in divorce actions must be subjected to the strict scrutiny of the "compelling state interest" test because it penalizes the exercise of her constitutional right of interstate travel. Although not guaranteed by any express provision in the Constitution, the right to move freely from state to state has long been recognized as a basic right of every American. *United States v. Guest*, 383 U.S. 745, 757-58, 16 L.Ed.2d 239, 249-50 (1966). "[T]he nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, and regulations which unreasonably burden or restrict this movement". *Shapiro v. Thompson*, 394 U.S. 618, 629, 22 L.Ed.2d 600, 612 (1969). Finding that some residency requirements impinge upon this freedom of movement within the United States, the Supreme Court has struck down as violative of the equal protection clause state statutes imposing one-year residency requirements

---

600, 627 (1969), and *Developments in the Law—Equal Protection*, 82 Harv.L.Rev. 1065 (1969).

It has been suggested that the Supreme Court has in fact employed a variety of standards of review in equal protection cases. See *Vlandis v. Kline*, 412 U.S. 441, 458-59, 37 L.Ed.2d 63, 75 (1973) (WHITE, J., concurring) ; *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 98-110, 36 L.Ed.2d 16, 81-88 (1973) (MARSHALL, J., dissenting). It has also been suggested that recently the Supreme Court, while demonstrating some reluctance to apply the "compelling state interest" test, has undertaken a greater degree of scrutiny under the "rational relationship" test. *See* Gunther, *Foreward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection*, 86 Harv.L.Rev. 1 (1972), especially at 20-37.

as conditions to the receipt of welfare benefits, *Shapiro v. Thompson, supra,* to the exercise of the right to vote, *Dunn v. Blumstein,* 405 U.S. 330, 31 L.Ed.2d 274 (1972), and to eligibility for non-emergency hospitalization and medical care, *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 39 L.Ed.2d 306 (1974). In each of these cases, the Court has indicated that any statutory classification which "penalizes" the exercise of the right of interstate travel must be supported by a compelling state interest. *Shapiro v. Thompson, supra* at 634, 22 L.Ed.2d at 615; *Dunn v. Blumstein, supra* at 339, 31 L.Ed.2d at 282; *Memorial Hospital v. Maricopa County, supra* at 258, 39 L.Ed.2d at 315.

While it has thus been protective of the right to travel, the Court has, however, made it clear that residency requirements are not per se invalid. *Memorial Hospital v. Maricopa County, supra* at 256, 39 L.Ed. 2d at 314. Indeed, many such requirements may not even constitute "penalties" upon interstate travel and therefore may not bring into play the strict scrutiny of the "compelling state interest" test.[7] For example, in *Vlandis v. Kline,* 412 U.S. 441, 37 L.Ed.2d 63 (1973), while it invalidated a Connecticut statute providing for certain irrebuttable presumptions relating to student residency,[8] the Court indicated that reasonable

---

[7] In *Shapiro v. Thompson, supra* at 638 n.21, 22 L.Ed.2d at 617 n.21, the Court was careful to state, "We imply no view of the validity of waiting period *or* residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the the constitutional right of interstate travel."

[8] The statutory provisions struck down in *Vlandis* permanently and irrebuttably classified as non-residents for state university purposes any unmarried student whose "legal address" was outside the state at any time during the one-year period immediately prior to his or her application for admission and any married

residency requirements as conditions of eligibility for in-state tuition rates could be imposed due to the "special problems involved in determining the bona fide residence of college students who come from out of State to attend that State's public university". *Id.* at 452, 37 L.Ed.2d at 72. As illustrative, the Court cited its earlier summary affirmance of a federal district court decision upholding the constitutionality of a University of Minnesota regulation requiring that students be bona fide residents of Minnesota for one year as a condition to eligibility for in-state tuition rates. See *Starns v. Malkerson,* 326 F. Supp. 234 (D. Minn. 1970), *affirmed,* 401 U.S. 985, 28 L.Ed.2d 527 (1971).[9] Similarly, in *Hadnott v. Amos,* 401 U.S. 968, 28 L.Ed.2d 318 (1971), the Supreme Court affirmed a district court decision which, although invalidating Alabama's voter residency requirement, upheld a residency requirement for circuit judge candidates. See *Hadnott v. Amos,* 320 F. Supp. 107 (M.D. Ala. 1970).

---

student whose "legal address" was outside the state when he or she applied for admission.

[9] Mr. Justice MARSHALL, concurring in *Vlandis,* stated that he now entertained serious question as to the validity of the *Starns* decision in light of equal protection principles "which limit the States' ability to set residency requirements for the receipt of rights and benefits bestowed on bona fide state residents," citing *Dunn v. Blumstein* and *Shapiro v. Thompson.* *Vlandis v. Kline,* 412 U.S. 441, 455, 37 L.Ed.2d 63, 73 (1973). Mr. Justice BRENNAN joined in the concurring opinion.

It should be noted, however, that *Starns* was decided after *Shapiro* and that, after *Vlandis* was decided, the Court, in a case very similar to *Starns,* summarily affirmed a decision upholding a one-year residency requirement as a condition to qualifying for in-state tuition benefits at the University of Washington. *See Sturgis v. Washington,* 368 F. Supp. 38 (W.D. Wash. 1973), *affirmed,* 414 U.S. 1057, 38 L.Ed.2d 464 (1973) (Justices BRENNAN and MARSHALL were of opinion that the Court should have noted probable jurisdiction and set the case for argument).

Thus, the question of whether the "compelling state interest" test is to be applied in a given case where durational residency is involved depends upon whether the particular requirement under review imposes a penalty upon interstate travel. The question is not free of difficulty. As the Supreme Court acknowledged in its latest decision in this field, referring to its own decision in *Shapiro v. Thompson, supra,* "The amount of impact [upon travel] required to give rise to the compelling state interest test was not made clear." *Memorial Hospital v. Maricopa County, supra* at 256-57, 39 L.Ed.2d at 314. The Court also implicitly recognized that the "ultimate parameters of the Shapiro penalty analysis" have not yet been defined. *Id.* at 259, 39 L.Ed.2d at 315.

Nevertheless, an examination of the three major Supreme Court decisions involving state residency requirements sheds some light upon the penalty concept. *Shapiro v. Thompson, supra,* involved welfare benefits, which for many persons are the sole means of obtaining the basic necessities of life. In *Dunn v. Blumstein, supra,* it was the right to vote which was involved, a right which the Court described as a "fundamental political right" and the "preservative of all rights". *Id.* at 336, 31 L.Ed.2d at 280. *Memorial Hospital v. Maricopa County, supra,* was concerned with medical care, another basic ingredient to the health and welfare of all people. In the case last cited, the Court emphasized that "governmental privileges or benefits necessary to basic sustenance have often been viewed as being of greater constitutional significance than less essential forms of governmental entitlements". *Id.* at 259, 39 L.Ed.2d at 315. From a study of these decisions we conclude that the extent to which a residency requirement can be said to impose a penalty upon interstate travel is a function of the extent to which the subject matter of the requirement is either a funda-

mental civil or political right or a matter essential to basic sustenance.

The subject matter of the requirement here challenged is the right to seek a dissolution of the marital relationship, i.e., to bring suit for divorce. While this right is indeed important, as the increasing volume of divorces annually granted bears witness,[10] and has a direct bearing on personal well being, including in some cases emotional health, we are not persuaded that it is a fundamental civil or political right, or a matter pertaining to the basic sustenance of an individual: it is not of a piece with receipt of welfare benefits, eligibility for hospitalization and medical care, or the exercise of the voting privilege.[11] It follows that imposi-

[10] In the Commonwealth of Pennsylvania 26,098 divorce actions were filed in 1970, 28,574 in 1971, 31,320 in 1972, and 33,967 in 1973. Administrative Office of Pennsylvania Courts, *Fourth Annual Report on Judicial Case Volume,* p. 11 (1973).

In the United States roughly 768,000 divorces—or 3.7 divorces for every 1,000 inhabitants—were granted in 1971. The total number of divorces and the divorce rate for 1,000 inhabitants for the years 1965-71 are as follows:

|      | *Total* | *Rate* |
|------|---------|--------|
| 1965 | 479,000 | 2.5    |
| 1966 | 499,000 | 2.5    |
| 1967 | 523,000 | 2.6    |
| 1968 | 584,000 | 2.9    |
| 1969 | 639,000 | 3.2    |
| 1970 | 715,000 | 3.5    |
| 1971 | 768,000 | 3.7    |

United States Bureau of the Census, *Statistical Abstract of the United States: 1972,* table no. 62, p. 50.

[11] The residency requirement in divorce actions need not serve to lock aggrieved spouses into intolerable situations, there being no residency requirement for actions for child custody, see *Commonwealth ex rel. Hickey v. Hickey,* 216 Pa. Superior Ct. 332, 264 A.2d 420 (1970), or for support and maintenance, *see* Act of May 23, 1907, P.L. 227, §1, *as amended,* 48 P.S. 131 (1965) ; Act of July 13, 1953, P.L. 431, §5, *as amended,* 62 P.S. 2043.35 (1968) ; and Act

tion of a period of residence as a prerequisite to the exercise of the right is not such a penalty upon interstate travel as to call for application of the "compelling state interest" test. The residency requirement, therefore, is to be judged by the "rational relationship" standard traditional in equal protection challenges.[12]

The rational relationship analysis requires that a statutory classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 64 L.Ed.2d 989, 990-91 (1920).[13] The application of this test must begin with the identification of the state interests involved in the statute in question. Essentially two state interests are promoted by durational residency requirements in divorce actions. The first is the deep concern of every state in the marital relationships of its domiciliaries. This Court has emphasized that marriage is more than a contract between two individuals; it is a relationship which "invests each party with a status towards

---

of December 6, 1972, P.L. 1365, No. 291, §11; 62 P.S. §2043-13(b) (Supp. 1974).

[12] The rational relationship test as to divorce residency requirements has also been held to be the proper equal protection approach in the following decisions, all of which have upheld the requirements: *Sosna v. Iowa*, 360 F. Supp. 1182, 1184 (N.D. Iowa 1973), probable jurisdiction noted, 415 U.S. 911, 39 L.Ed.2d 465 (1974); *Whitehead v. Whitehead*, 53 Hawaii 302, 312, 492 P.2d 939, 945 (1972); *Davis v. Davis*, 297 Minn. 187, 193, 210 N.W.2d 221, 225 (1973); *Ashley v. Ashley*, 191 Neb. 824, 217 N.W.2d 926, 927 (1974); *Coleman v. Coleman*, 32 Ohio St. 2d 155, 158, 291 N.E.2d 530, 533 (1972).

[13] This statement of the "rational relationship" test has been reiterated in *Eisenstadt v. Baird*, 405 U.S. 438, 447, 31 L.Ed.2d 349, 359 (1972), and *Reed v. Reed*, 404 U.S. 71, 76, 30 L.Ed.2d 225, 229 (1971).

the other and society at large, involving duties and responsibilities which are no longer matter for private regulation, but concern to the Commonwealth." *Moorehead's Estate,* 289 Pa. 542, 552, 137 A. 802 (1927) (quoting *Coy v. Humphreys,* 142 Mo. App. 92, 125 S.W. 877 (1910)).

The United States Supreme Court has long recognized this state interest. In *Williams v. North Carolina I,* 317 U.S. 287, 87 L.Ed. 279 (1942), the Court observed that "[e]ach state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders. The marriage relation creates problems of large social importance." *Id.* at 298, 87 L.Ed. at 286. Similarly, as to divorce, the dissolution of the marriage relation, the Court in *Williams v. North Carolina II,* 325 U.S. 226, 89 L.Ed. 1577 (1945), stated, "Divorce, like marriage, is of concern not merely to the immediate parties. It affects personal rights of the deepest significance. It also touches basic interests of society." *Id.* at 230, 89 L.Ed. at 1581.

It is important, therefore, that it should be Pennsylvania, and not another state having no interest in the marriage, which exercises divorce jurisdiction in cases in which one of the parties is domiciled in the Commonwealth. Conversely, it is equally important that Pennsylvania refrain from purporting to exercise divorce jurisdiction in cases in which neither party is domiciled in this state. Failure so to refrain would intrude this state into relationships with which it has no interest, but in which one or more other states have a deep and legitimate concern. Such intrusions would be both unnecessary and unfortunate, and could also transform Pennsylvania into what is commonly referred to as a "divorce mill".

It is because of this recognized interest of the state in the marriage relationship that jurisdiction to dis-

solve it normally requires the domicil in the forum state of at least one or the other party to the action. See *Restatement (Second) of Conflict of Laws* §§70, 71 (1971).[14] This requirement of domicil, or a period of residency in the state which is the virtual eqivalent of domicil, gives rise to the second state interest promoted by divorce residency requirements, namely, that of insuring that a state's judicial decrees are entitled to and be accorded full faith and credit in a sister state.[15] Thus a divorce decree rendered by a court of a state in which neither party is domiciled is not entitled to full faith and credit. *Williams v. North Carolina II, supra.* And if, in an ex parte divorce proceeding, the forum state assumes jurisdiction because it finds the plaintiff to be domiciled within its borders, that determination is not conclusive upon the courts of another state in a later proceeding involving the defendant spouse if that spouse did not appear in the original divorce action. Such a determination "is entitled to respect, and more", *Williams v. North Carolina II, supra* at 233, 89 L.Ed. at 1583-84, but reexamination by the courts of a second state is not foreclosed.[16] If upon such a reexamination it is decided that there

[14] A state may, nevertheless, possess sufficient interest in one or both spouses by reason of some relationship other than domicil to permit it to accept divorce jurisdiction. An example is residence (as distinguished from domicil) by one of the spouses for a substantial period, such as a year. *See* Restatement (Second) of Conflict of Laws §72 (1971).

[15] Article IV, Section 1, of the Constitution of the United States provides: "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State."

[16] "The divorce court's finding of domicil does not create jurisdiction. Domicil, like any other jurisdictional fact, is subject to collateral attack in the state of rendition or in any other state [subject, however, to the limitations of the rules of res judicata or estoppel]". Restatement (Second) of Conflict of Laws §72, Comment C (1971).

was no domiciliary basis for jurisdiction by the state rendering the decree, the divorce is not entitled to full faith and credit. In that event serious problems may arise if one of the parties has purported to remarry. Such a party and his or her new "spouse" may be subject to criminal prosecution for bigamy or adultery. The legitimacy of children may be brought into serious question. In case of the death of a party to either the first or a later marriage, there may be disputes as to which "spouse" is entitled to social security and other death benefits payable to surviving spouses and to the statutory share in the estate of the decedent.[17]

To summarize: Pennsylvania, like every other state, has a deep concern in the marital status of its domiciliaries. Should it undertake to exercise divorce jurisdiction where neither party is a domiciliary or the equivalent (see n. 14, *supra*), it would be deciding whether or not to dissolve a marriage in which it has no interest; by the same token, it would be interfering

---

[17] The Introductory Note of The American Law Institute to its treatment of jurisdiction for divorce states the point well: "The question dealt with in this Topic is complicated by the variety of interests involved. Divorce is of obvious concern to the spouses themselves and to their children. It also is of especial interest to the state where the spouses make their home, that is, to the state of their domicil. For marriage is more than a consensual relationship; it is an important social institution as well. There is no jurisdictional difficulty when the forum state is the domicil of both spouses. But if the divorce is sought at the domicil of only one spouse or of neither, and if the other spouse is not before the court, the question arises whether the divorce decree will be valid at all, and, if so, for what purposes. The latter inquiry is important because a divorce decree normally does more than sever the personal relationship of husband and wife and thus permit the spouses to remarry. Generally, it likewise affects their economic relations, such as by destroying the right of each to share in the other's estate and by determining the extent, if any, to which one spouse must thereafter contribute to the other's support." Restatement 2d, Conflict of Laws 215-16 (1971).

with a relationship in which another state or states do have a strong interest. In the process, it would be undermining the strength of its own judicial decrees. Finally, a divorce decree without jurisdictional basis creates serious problems not only for the parties to the original marriage, but also for innocent third persons who become involved as children or by purporting to marry one of the parties or who have legitimate claims to inheritance from one or another spouse. It is a legitimate state interest to seek to avoid such consequences by any reasonable means.[18]

It may be argued, as indeed appellant does, that all of this is beside the point: conceding that domicil is a prerequisite to divorce jurisdiction, a court should make an independent determination of the domicil of the parties in each case; there is no magic in a year of residence. It is true, of course, that domicil may be acquired in a brief time, and in some rare situations may not be acquired after a year of residence. Simply stated, a domicil of choice is established by the concurrence of (1) physical presence within a state (or other place), and (2) an intent to make a home there.

---

[18] Our Brother ROBERTS, in dissent, acknowledges that the state interests here involved are "weighty interests indeed, which may well be compelling" (see *infra*, p. 531 ). He concludes, however, that the Pennsylvania residency requirement is not "precisely tailored" to serve these interests, and therefore cannot withstand the strict scrutiny of the "compelling state interest" test. Thus the principal disagreement between this opinion and the dissenting opinion concerns the choice of the equal protection standard to be applied. Under the "rational relationship" test which we here find to be the proper one, the legislature is not held to the "precise tailoring" approach; all that is required is that the means adopted to achieve or preserve the state's interest be reasonable, i.e., bears a "fair and substantial relation to the object of the legislation." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 64 L.Ed. 989, 990-91 (1920). See also *Dandridge v. Williams*, 397 U.S. 471, 483-87, 25 L.Ed.2d 491, 501-03 (1970).

*Loudenslager Will,* 430 Pa. 33, 37-38, 240 A.2d 477 (1968) ; *Publicker Estate,* 385 Pa. 403, 405-06, 123 A.2d 655 (1956) ; Restatement (Second) of Conflict of Laws §§15, 16, 18 (1971). But it is a known jurisprudential fact that these requisites are deceptively simple, and are much more easily stated than applied.[19] In particular, whether an individual possesses the necessary intent is often a very difficult question to answer. Generally, the court will consider the expressions of a person, see *Publicker Estate, supra,* but expressions of intent are not conclusive, see *Dorrance's Estate,* 309 Pa. 151, 163 A. 303 (1932). A court will also look to acts and circumstances,[20] but the evidence is often ambiguous and reasonable minds may well differ as to the conclusion to be drawn from a particular set of facts.[21]

---

[19] As the Restatement puts it, "(t)he rules for the acquisition of a domicil of choice are relatively simple; the difficulty comes in applying them in situations where the person's contacts are more or less equally divided between two or more states." *Special Note on Evidence for Establishment of a Domicil of Choice,* Restatement (Second) of Conflict of Laws 81 (1971).

[20] As to the factors which a court will consider in determining the question of domicil, see *Texas v. Florida,* 306 U.S. 398, 413-28, 83 L.Ed. 817, 828-36 (1939) ; *Dorrance's Estate,* 309 Pa. 151, 163 A. 303 (1932) ; *Special Note on Evidence for Establishment of a Domicile of Choice,* Restatement (Second) of Conflict of Laws 81-83 (1971) ; Note, *Evidentiary Factors in the Determination of Domicil,* 61 Harv. L. Rev. 1232 (1948).

[21] An example of the pitfalls and confusion which may result when two courts must each decide the question of the domicil of the same person at the same time is afforded by the case of Dr. John T. Dorrance, who had maintained residences in both Pennsylvania and New Jersey. In *Dorrance's Estate,* 309 Pa. 151, 163 A. 303 (1932), the Supreme Court of Pennsylvania, Justices SCHAFFER and KEPHART dissenting, decided that Dr. Dorrance had been domiciled in Pennsylvania at the time of his death and therefore that his estate was subject to Pennsylvania inheritance tax. The Prerogative Court of New Jersey, on the other hand, concluded in *Dor-*

If the question of domicil is left entirely to a case by case adjudication, the issue will often be impossible to resolve with reasonable certainty that a correct result has been reached or that the determination will not later be overturned in a collateral attack in a second state.[22] A one-year residency requirement substantially reduces this uncertainty with more conclusive evidence of intent. Residence in Pennsylvania for one year is itself strong evidence of an intention to remain in the state; and the expressions and actions of a person over a period of a year are obviously more reliable evidence of intent than the expressions and actions of that same person during a lesser period of days, weeks, or months.

In sum, not only does Pennsylvania have strong interests in exercising its divorce jurisdiction only in cases involving its domiciliaries, or those with whom it has ties almost equally strong, but the statutory distinction between those residents who have been in the state for one year and those who have not is reasonable

---

*rance's Estate*, 115 N.J. Eq. 268, 170 A. 601 (1934), *affirmed*, 116 N.J.L. 362, 184 A. 743 (1936), *cert. denied*, 298 U.S. 678, 80 L.Ed. 1399 (1936), that Dr. Dorrance had been domiciled in New Jersey and therefore that his estate was subject to death taxes in that state.

[22] A thorough examination of the domicil of the parties in each case is unfeasible due to the large number of divorce actions filed each year, *see* note 10 *supra*. The task is further complicated by the fact that a large percentage of divorce cases are uncontested. In Allegheny County, for example, the comparative statistics for divorce trials before masters during a recent three-year period are as follows:

|  | Contested | Uncontested | Total |
| --- | --- | --- | --- |
| July 1, 1969—June 30, 1970 | 55 | 2,992 | 3,047 |
| July 1, 1970—June 30, 1971 | 42 | 3,648 | 3,690 |
| July 1, 1971—June 30, 1972 | 39 | 4,080 | 4,119 |

*Court of Common Pleas of Allegheny County, Pennsylvania, Annual Report*: 1971-72, p. 29.

and bears a "fair and substantial" relationship to those interests. We hold, accordingly, that the one year residency requirement in divorce actions is not violative of appellant's right to the equal protection of the laws.

## II.

The second basis upon which appellant attacks the one year residency requirement is the Due Process clause of the Fourteenth Amendment to the Constitution of the United States. Principal reliance is placed upon *Boddie v. Connecticut*, 401 U.S. 371, 28 L.Ed.2d 113 (1971). In *Boddie* the Supreme Court held it a violation of due process for Connecticut to require that indigents pay fees for filing complaints and effecting service of process in divorce actions.

The Court began its opinion by emphasizing two aspects of the case before it: (1) the basic importance of the marital relationship; and (2) the absolute nature of Connecticut's exclusion from its courts. *Id.* at 376-77, 28 L.Ed.2d at 118. The Court then held that "due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Id.* at 377, 28 L.Ed.2d at 118. Although the Court concluded that Connecticut could not deny divorces to indigents because they failed to pay the fees, it was careful to point out that it was going "no further than necessary" to decide the case before it. *Id.* at 382, 28 L.Ed.2d at 122. "We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of an individual, for as we have already noted, in the case before us this right is the exclusive precondition

to the adjustment of a fundamental human relationship." *Id.* at 382-83, 28 L.Ed.2d at 122.[23]

Two more recent Supreme Court cases have already delineated limits to the reach of the *Boddie* decision. In *United States v. Kras,* 409 U.S. 434, 34 L.Ed.2d 626 (1973), the Court upheld the constitutionality of requiring filing fees as conditions to discharges in bankruptcy. The Court based its decision upon the fact that neither a fundamental interest nor an absolute exclusion was involved. In *Ortwein v. Schwab,* 410 U.S. 656, 35 L.Ed.2d 572 (1973), the Supreme Court upheld Oregon's appellate court filing fee as applied to welfare recipients seeking review of decisions of the Public Welfare Division. The Court emphasized that no fundamental interest was involved.

The instant case is similar to *Boddie* in that it involves dissolution of the fundamental marital relationship. It is unlike *Boddie,* however, in that there is no danger that any individual will be permanently denied access to the courts. Those moving into Pennsylvania

---

[23] This language in *Boddie* which describes marriage as a "fundamental human relationship" is relied upon by the dissenting opinion as support for its conclusion that a denial, even though temporary, of access to courts for the purpose of seeking dissolution of a marriage constitutes such a penalty upon the exercise of the right of interstate travel as to require application of the "compelling state interest" test (see *infra* p. 526 n.6 and p. 530 n.16 and accompanying text). This argument is a non-sequitur. The *Boddie* decision is grounded entirely upon a denial of due process of law; the opinion makes no reference to equal protection. We find no warrant for the transposition of the *Boddie* court's due process rationale so as to equate postponement of a desired divorce with a penalty upon the right to travel and so a denial of equal protection of the laws under *Shapiro, Dunn* and *Maricopa County.* Neither can we accept the bland suggestion in the dissenting opinion, which it also relates to *Boddie,* that a married person, because he finds his present marriage "lifeless", is for that reason invested with a legally protected "right to remarry."

will always be able to bring an action in divorce in one year.  Since we read *Boddie* as requiring *both* a fundamental interest *and* the threat of a permanent denial of access to the courts, invalidation of the Pennsylvania residency requirement would be a significant extension of the holding of that case.  We find no warrant for such an extension, and therefore we decline to make it.[24]

Order affirmed.

_____

[24] At least four other states have also rejected similar challenges, based upon *Boddie*, to the validity of divorce residency requirements.  See *Coleman v. Coleman*, 32 Ohio St. 2d 155, 291 N.E.2d 530, 534 (1972) ; *Davis v. Davis*, 297 Minn. 187, 210 N.W.2d 221, 227 (1973) ; *Porter v. Porter*, 112 N.H. 403, 296 A.2d 900, 902 (1972) ; *Whitehead v. Whitehead*, 53 Hawaii 302, 492 P.2d 939 (1972).

_____

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent.  I cannot approve, as the majority does, the closing of the courthouse door with a one-year time lock to a Pennsylvanian seeking a divorce from another Pennsylvanian.  The majority seeks to justify this denial of access by saying that there is only a deferral of the judicial remedy.  But it is proverbial that "Justice delayed is justice denied," and this jurisprudential doctrine is expressly recognized in the Pennsylvania Constitution: "All courts shall be open; and every man for an injury done him . . . shall have remedy by due course of law, and right and justice administered *without* . . . delay."[1]  The one-year residence requirement for commencement of divorce proceedings thus violates the Pennsylvania Constitution and the federal guarantee of due process of law.[2]

Furthermore, the majority errs seriously in its equal protection analysis.  In my view, it is not enough that

_____

[1] Pa. Const., art. I, §11 (emphasis added).

[2] U.S. Const., amend. XIV, §1.

this durational residence requirement satisfies the "rational relationship" test. Rather, it cannot stand unless *"necessary* to promote a *compelling* governmental interest."[3] Because the Commonwealth's interests could be served by means less burdensome to the fundamental interests involved, the one-year residence requirement is not *necessary* to the promotion of the Commonwealth's interests and, therefore, must fall.

## I.

As Mr. Justice HARLAN wrote for the United States Supreme Court in *Boddie v. Connecticut,* 401 U.S. 371, 91 S. Ct. 780 (1971) : "[T]he right to due process reflects a fundamental value in our American constitutional system.

. . . .

"[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." Id. at 374, 377, 91 S. Ct. at 784, 785.

Further, the opportunity to be heard must be "granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, 1191 (1965), quoted in *Boddie v. Connecticut,* supra, at 378, 91 S. Ct. at 786.[4] *Boddie* also provides a guide for ascertaining the precise content of this requirement as it applies to those seeking divorce. "[A]lthough they assert here due process rights as would-be plaintiffs, we

---

[3] *Dunn v. Blumstein,* 405 U.S. 330, 342, 92 S. Ct. 995, 1003 (1972) (emphasis in original) ; *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 262-69, 94 S. Ct. 1076, 1084-88 (1974) ; *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S. Ct. 1322, 1331 (1969).

[4] See also the cases cited in *Boddie,* 401 U.S. at 377-79 & n.3, 91 S. Ct. at 785-87 & n.3.

think appellants' plight, because resort to the state courts is the only avenue to dissolution of their marriages, is akin to that of defendants faced with exclusion from the only forum effectively empowered to settle their disputes. Resort to the judicial process by these plaintiffs is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court. For both groups this process is not only the paramount dispute-settlement technique, but, in fact, the only available one. In this posture we think that this appeal is properly to be resolved in light of the principles enunciated in our due process decisions that delimit rights of *defendants* compelled to litigate their differences in the judicial forum." 401 U.S. at 376-77, 91 S. Ct. at 785 (emphasis added).

Because those seeking divorce, unlike most defendants, require judicial relief from the status quo, the precise analogy must be to those defendants who have been subjected to preliminary injunctions. It can hardly be imagined that due process would be accorded if the state, where a preliminary injunction affecting such a fundamental interest as that in marriage had been entered, forbade any inquiry into its propriety for one year. And certainly it cannot be asserted that such a moratorium would be permitted by the Pennsylvania Constitution, which commands that justice be "administered without . . . delay."[5]

The majority acknowledges the authority of *Boddie,* but contends that it has been limited by the decisions in *United States v. Kras,* 409 U.S. 434, 93 S. Ct. 631 (1973), and *Ortwein v. Schwab,* 410 U.S. 656, 93 S. Ct. 1172 (1973). Those cases are entirely inapposite to the question before us. Both relied on the absence of any effect upon a fundamental interest, coupled with the "existence of alternatives . . . to the judicial remedy."

---

[5] Pa. Const., art. I, §11.

*Ortwein v. Schwab,* supra, at 659, 93 S. Ct. at 1174, *United States v. Kras,* supra, at 445-46, 93 S. Ct. at 638. In the instant case, however, we are faced with precisely the factors which *Boddie* found controlling: the state-created requirement of access to the judicial process as "the exclusive precondition to the adjustment of a fundamental relationship." 401 U.S. at 383, 91 S. Ct. at 788. Consequently, *Boddie* governs this case.

In a further effort to escape the mandate of *Boddie,* the majority contends, without textual support, that *Boddie* applies only where there is a "threat of permanent denial of access to the courts." Ante at 522. Even on its own premise, this argument is doomed to failure, for it ignores the mobility of our populace. For many people, more or less frequent changes of domicile are a fact of life. In this very case, appellant changed her domicile twice within a year. If Illinois imposed a similar durational residence requirement, then appellant would have been precluded from even seeking a divorce for her entire 11 month period of residence in Illinois and then for an additional year after her return to Pennsylvania. This amply illustrates that the challenged statute, combined with similar requirements in other states, does indeed threaten long and indefinite denials of access to the courts, similar to that involved in *Boddie.*

But even if the majority's distinction of *Boddie* were conceded, there would still remain the unmistakable mandate of our state constitution that justice be "administered without . . . delay." This command is the rock upon which any effort to sustain the statute before us must founder, for it clearly forbids the Commonwealth to delay for an entire year any access to the courts by a Pennsylvania citizen otherwise entitled to relief against another Pennsylvania citizen.

For these reasons, the one year residence requirement for access to the divorce courts violates both article I, section 11 of the Pennsylvania Constitution and the Fourteenth Amendment to the United States Constitution.

## II.

This statute also denies appellant the equal protection of the laws guaranteed by the Fourteenth Amendment.

As the majority recognizes, "any statutory classification which 'penalizes' the exercise of the right of interstate travel must be supported by a compelling state interest." Ante at 509, *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S. Ct. 1322, 1331 (1969); *Dunn v. Blumstein,* 405 U.S. 330, 339, 92 S. Ct. 995, 1001 (1972); *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 258, 94 S. Ct. 1076, 1082 (1974). Surely denial of appellant's right to seek divorce because of her recent exercise of the right to travel penalizes her for that exercise.

The Commonwealth, by means of the one-year residence requirement, denies appellant access to the courts for the purpose of seeking a divorce—"the adjustment of a fundamental human relationship."[6] "The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men.

"Marriage is one of the 'basic civil rights of man' . . . ." *Loving v. Virginia,* 388 U.S. 1, 12, 87 S. Ct. 1817, 1824 (1967).

Where the burden imposed on the interstate traveler affects so fundamental an interest, that burden must be viewed as a penalty imposed upon those who have

---

[6] *Boddie v. Connecticut,* 401 U.S. 371, 383, 91 S. Ct. 780, 788 (1971) (per HARLAN, J.).

recently exercised their constitutional right to "migrate, resettle . . . and start a new life"[7] in Pennsylvania.

It may be objected that the interest at issue here is not marriage, but divorce. However, as the Supreme Court recognized in *Boddie v. Connecticut*,[8] the two interests are not easily separated. Only by resort to the courts may spouses "liberate themselves from the constraints of legal obligations that go with marriage, and more fundamentally the prohibition against remarriage."[9] Clearly, to one whose existing marriage is lifeless, the right to remarry is equivalent in importance to the right to marry initially. While the state may regulate the grounds on which divorce will be granted, it may not discriminate among those who meet its substantive requirements on the basis of an unconstitutional criterion. See *Boddie v. Connecticut*, 401 U.S. 371, 385-86, 91 S. Ct. 780, 790 (1971) (DOUGLAS, J., concurring in the result).

Neither is it sufficient to reason, as some courts[10] have that divorce is only deferred briefly and "[d]ivorce can wait.[11] As previously noted, many people, for occupational or other reasons, change domicile relatively frequently. The danger of denying the more mobile segments of our population any access to the divorce courts for long periods through cumulation of durational residence requirements is a powerful argument

---

[7] *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 255, 94 S. Ct. 1076, 1080 (1974), quoting from *Shapiro v. Thompson*, 394 U.S. 618, 629, 89 S. Ct. 1322, 1328 (1969).

[8] 401 U.S. 371, 91 S. Ct. 780 (1971).

[9] Id. at 376, 91 S. Ct. at 785.

[10] *Whitehead v. Whitehead*, 53 Hawaii 302, 312, 492 P.2d 939, 945 (1972). See also, *Davis v. Davis*, 297 Minn. 187, 193, 210 N.W.2d 221, 225 (1973) ; *Coleman v. Coleman*, 32 Ohio St. 2d 155, 159 n.5, 291 N.E.2d 530, 533 n.5 (1972).

[11] *Whitehead v. Whitehead*, 53 Hawaii 302, 312, 492 P.2d 939, 945 (1972).

for insisting that these requirements be justified by a compelling state interest.

It is also no answer to say, "There is no indication that appellant was compelled to travel to [Pennsylvania] prior to filing for a divorce . . . ." *Coleman v. Coleman,* 32 Ohio St. 2d 155, 159 n.4, 291 N.E.2d 530, 533 n.4 (1972). This forces those in appellant's position to choose between migration and prompt adjustment of their marital situations. Even more importantly, where, as here, the respondent spouse chooses to migrate, one in appellant's situation is then forced to sacrifice important values no matter what course is taken. If she chooses to follow her spouse, she abandons all hope of prompt relief should reconciliation prove unsuccessful. If she refuses to migrate, she abandons all hope of reconciliation and must then undertake an ex parte divorce proceeding, which cannot settle matters of property or child custody, *Estin v. Estin,* 334 U.S. 541, 68 S. Ct. 1213 (1948), and is subject to collateral attack, *Williams v. North Carolina [II],* 325 U.S. 226, 65 S. Ct. 1092 (1945).

Despite the magnitude of this burden, the majority concludes that it does not constitute a penalty. As an original proposition, it would seem that, "[a] 'penalty' in this context means the suffering of 'disadvantage, loss or hardship due to some action.' " *Larsen v. Gallogly,* 361 F. Supp. 305, 307 (D.R.I. 1973) (three-judge court) (holding Rhode Island two-year residence requirement for divorce unconstitutional). The majority, however, relies on two recent opinionless orders[12]

---

[12] *Starns v. Malkerson,* 401 U.S. 985, 91 S. Ct. 1231 (1971), aff'g mem. 326 F. Supp. 234 (D. Minn. 1970) ; *Sturgis v. Washington,* 414 U.S. 1057, 94 S. Ct. 563, aff'g mem. 368 F. Supp. 38 (W.D. Wash. 1973).

*Hadnott v. Amos,* 401 U.S. 968, 91 S. Ct. 1189, aff'g mem. 320 F. Supp. 107 (M.D. Ala. 1970), which is also relied upon by the majority is not in point. Although the district court purported to

of the Supreme Court affirming district courts which upheld, against right to travel challenges, one-year durational residence requirements for entitlement to subsidized in-state tuition rates for public higher education. While the basis for these orders is unclear, they appear to rest upon a conclusion that the durational residence requirements there involved did not "penalize" the interstate traveler.[13] Consequently, it does appear that not every cost imposed upon the exercise of the right to interstate travel will be deemed a "penalty."

But the burden imposed here is not merely the denial of subsidized tuition at a state university or of a "license to . . . hunt, or fish."[14] Rather it involves denial of access to the courts of this Commonwealth for the purpose of seeking a divorce.[15] It can hardly

---

uphold the validity of Alabama's durational residence requirement for circuit judge candidates, 320 F. Supp. at 119-23, that portion of the opinion is sheer dictum. The court had already determined that the plaintiff was not a resident of the judicial circuit at all. Because residence, as opposed to durational residence, requirements create no burden on the right to travel, they do not raise the sort of constitutional problems now before us. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 253-54, 94 S. Ct. 1076, 1080 (1974). Thus, the finding of non-residence was sufficient to dispose of petitioner's claim to placement on the ballot without regard to the validity of the durational residence requirement.

[13] This was the basis of both of the district court decisions which were affirmed. More importantly, it is difficult to ascertain what compelling state interests, incapable of being served by less onerous means, might have sustained the requirements against the strict scrutiny mandated by *Shapiro* and *Dunn* if a "penalty" were found.

[14] *Shapiro v. Thompson*, 394 U.S. 618, 638 n.21, 89 S. Ct. 1322, 1333 n.21 (1969) (reserving decision on whether durational residence requirements for these privileges constitute penalties for exercise of the right to interstate travel).

[15] With regard to the weight of this interest, cf. Pa. Const., art. I, §11: "All courts shall be open; and every man for an injury done him . . . shall have remedy by due course of law, and right and justice administered without . . . delay."

be doubted that the interest in divorce is of greater constitutional magnitude than that in a college tuition subsidy.[16] Furthermore, whatever may be the constitutional status of the right to receive welfare benefits, compare *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 257-61, 94 S. Ct. 1076, 1082-83 (1974), with *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S. Ct. 1153, 1162 (1970), it is clear that it "has far less constitutional significance" than the right to seek a divorce. *Ortwein v. Schwab,* 410 U.S. 656, 659, 93 S. Ct. 1172, 1174 (1973). It is therefore clear that this case is governed by *Shapiro, Dunn,* and *Memorial Hospital,* requiring the application of the more stringent standard.

This conclusion also represents the overwhelming consensus of the federal courts which have passed on this issue. *Makres v. Askew,* 500 F.2d 577 (5th Cir. 1974), aff'g *Shiffman v. Askew,* 359 F. Supp. 1225 (M.D. Fla. 1973) (both applying compelling interest standard); *Larsen v. Gallogly,* 361 F. Supp. 305 (D.R.I. 1973) (three-judge court); *Mon Chi Heung Au v. Lum,* 360 F. Supp. 219 (D. Hawaii 1973) (three-judge court); *Wymelenberg v. Syman,* 328 F. Supp. 1353 (E.D. Wis. 1971) (three-judge court); contra, *Sosna v. Iowa,* 360 F. Supp. 1182 (N.D. Iowa 1973) (three-judge court) (2-1), prob. juris. noted, 415 U.S. 911, 94 S. Ct. 1405 (1974).

What, then, are the state interests which purport to justify the one-year durational residence requirement here involved? They have been succinctly stated: "[I]t is indelibly ingrained in our federal system that

---

[16] Compare, *Boddie v. Connecticut,* 401 U.S. 371, 383, 91 S. Ct. 780, 788 (1971) (marriage "fundamental relationship") and *Loving v. Virginia,* 388 U.S. 1, 12, 87 S. Ct. 1817, 1824 (1967) ("Marriage is one of the 'basic civil rights of man' . . . .") with *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S. Ct. 1278 (1973) (education not fundamental right).

the entire field of marriage and divorce is left to the individual regulation of the several states. . . . [T]he states have a vital and individual interest in such regulation, not only with respect to the effective implementation of their own internal policies, but also in avoiding any intrusion upon the authority and policies of a sister state concerning the same marriage or the same parties. . . . [T]he states have an equally vital and closely related interest in assuring the future validity and integrity of their judicial decrees, particularly in ex parte proceedings predicated upon constructive service of process, because those decrees are subject to collateral attack in other jurisdictions and may frequently involve the personal and property rights of third persons whose legal interests are peculiarly dependent upon those decrees, i.e., subsequent spouses of the parties, the children of both, their respective estates and others."[17]

These are weighty interests indeed, which may well be compelling. But it is not enough that the state interests be compelling. The state must also use means which are precisely tailored to serve those interests without *unnecessarily* burdening the exercise of the right to travel. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 262-69, 94 S. Ct. 1076, 1084-88 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 345-60, 92 S. Ct. 995, 1004-12 (1972); cf. *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354-56, 71 S. Ct. 295, 298-99 (1951). The durational residence requirement here is not so tailored. The requirement is unduly burdensome to the exercise of the right to travel in at least two ways.

First, the statute[18] fails to distinguish between those divorce proceedings conducted ex parte and those, such

---

[17] *Shiffman v. Askew*, 359 F. Supp. 1225, 1231 (M.D. Fla. 1973), aff'd *Makres v. Askew*, 500 F. 2d 577 (5th Cir. 1974), quoted in the amicus brief for the Commonwealth.

[18] "No spouse shall be entitled to commence proceedings for divorce by virtue of this act who shall not have been a bona fide

as this,[19] where both spouses are (new) domiciliaries of the Commonwealth and properly before the court.[20] In cases where both spouses are Pennsylvanians no other jurisdiction has any interest in the marriage and the dangers of collateral attack are extremely remote. Consequently, the Commonwealth has no substantial interest in excluding those cases from its courts for even the year required to satisfy the statutory requirement. Thus, without regard to the broader issues tendered, the statute is unconstitutional as applied to those cases where both parties, as here, are domiciliaries of the Commonwealth and both are before the court.

Second, the statute precludes those, like appellant, who have been residents for less than one year from even attempting to show they are bona fide domiciliar-

---

resident in this Commonwealth at least one whole year immediately previous to the filing of his or her petition or libel: Provided, That, if the proceedings for divorce are commenced in the county where the respondent has been a bona fide resident at least one whole year immediately previous to the filing of such proceedings, in such case, residence of the libellant within the county or State for any period shall not be required. The libellant shall be a competent witness to prove his or her residence." Act of May 2, 1929, P.L. 1237, §16, as amended, 23 P.S. §16 (Supp. 1974).

[19] The case having been dismissed on preliminary objections in the nature of a demurrer, all properly pleaded facts are taken as admitted for the purpose of testing the sufficiency of the complaint. *Balsbaugh v. Rowland*, 447 Pa. 423, 290 A.2d 85 (1972) ; *Engel v. Parkway Co.*, 439 Pa. 559, 266 A.2d 685 (1970) ; *Fawcett v. Monongahela R. Co.*, 391 Pa. 134, 137 A.2d 768 (1958). The complaint alleges that, after moving to Illinois, the parties returned to Pennsylvania, to reside permanently therein. This adequately alleges that both are domiciliaries of Pennsylvania. *Coulter Estate*, 406 Pa. 402, 406, 178 A.2d 742, 745 (1962) ; *Publicker Estate*, 385 Pa. 403, 405, 123 A.2d 655, 658 (1956).

[20] See, e.g., Iowa Code §598.6 (1971), quoted in *Sosna v. Iowa*, 360 F. Supp. 1182, 1183 n.1 (N.D. Iowa 1973) (durational residence requirement inapplicable where respondent is resident of state and personally served).

ies. No matter how overwhelming their proof of domicile, the statute closes the courts to them. All the state interests advanced may be fully served by a finding of domicile which is adequately supported to withstand collateral attack, bolstered as it is by the constitutional mandate that "great deference" be accorded such judgments even on the issue of jurisdiction. *Williams v. North Carolina [II]*, 325 U.S. 226, 234, 65 S. Ct. 1092, 1097 (1945). Consequently, a rebuttable presumption that those resident for less than one year are not domiciliaries would adequately serve the state interests in question.[21] To the extent that false allegations of domicile are feared, that problem may be met by judicial vigilance, stringent requirements of proof, and the ordinary tools used to prevent and detect perjury. It may be that few will be able to prove domicile with sufficient clarity, but that does not justify failure to give relief to those who can.

Surely this statute could be made less onerous to interstate travelers by both of the means suggested above. Neither of them requires sacrifice of the weighty state interests implicated in the durational residence requirement. In response, the majority answers only that more judicial time would be required to ascertain the facts in each case.[22] Economy of judicial effort,

---

[21] There may be other means by which the state might decrease even further the burden imposed upon the exercise of the right to travel. If so, then a statute which cures only the defects noted in this opinion would still be invalid, for the compelling interest standard permits the state to use only the *least* burdensome means available. It is unnecessary to the decision of this case to consider whether any alternatives even less burdensome than those mentioned herein are available.

[22] Ante at n.21. The enormous numbers of cases there mentioned are largely irrelevant to the issue here presented. The statute here involved virtually assures that none of them involve persons resident in this Commonwealth for less than one year. Only in those cases where neither party meets the one year residence

however desirable, is simply not a compelling interest. As the Supreme Court said in *Stanley v. Illinois*, 405 U.S. 645, 656-57, 92 S. Ct. 1208, 1215 (1972) : ". . . [I]t may be argued that unmarried fathers are so seldom fit that Illinois need not undergo the administrative inconvenience of inquiry in any case . . . . The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less and perhaps more, than mediocre ones.

"Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of [fact], when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand.[23]

---

test will any additional scrutiny be required. The number of such cases is purely speculative but surely only a small fraction of the total number of divorces.

[23] Footnotes omitted. See also *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 645, 94 S. Ct. 791, 798-99 (1974) (presumption that teacher unfit to teach during last five months of pregnancy) ; *Vlandis v. Kline*, 412 U.S. 441, 451, 93 S. Ct. 2230, 2236 (1973) (presumption of non-residence based on student status since time of arrival) ; *United States Dept. of Agriculture v. Murry*, 413 U.S. 508, 513-14, 93 S. Ct. 2832, 2835-36 (1973) (presumption of non-indigency based on prior year's claimed dependency for income tax purposes) ; *Bell v. Burson*, 402 U.S. 535, 540-41, 91 S. Ct. 1586, 1590 (1971) (presumption that uninsured motorist involved in auto accident is subject to liability for that accident).

Because the statute before us is not narrowly tailored to the service of the state purposes which purport to justify it, the Equal Protection Clause forbids that it be given any effect. As noted in Part I of this opinion, the statute is also inconsistent with Article I, section 11 of the Pennsylvania Constitution and the Due Process Clause of the Fourteenth Amendment. For all of these reasons, I would reverse the order of the Superior Court and remand to the Court of Common Pleas for proceedings on the merits.

Mr. Justice MANDERINO joins in this dissenting opinion.

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I join in the dissenting opinion of Mr. Justice ROBERTS. I am able to pamper precedents. I can easily sanctify suspect classifications. I have no problem deferring to domicile. I cannot agree, however, to declassify judicial secrets. Why should we reveal to others that their individual right to elect a mayor, *see Dunn v. Blumstein,* 405 U.S. 330, 31 L.Ed.2d 274, 92 S. Ct. 995 (1972), is more important than their right to elect a mate.