## Kyle v. Kyle

Before Bodley, Ludwig and Bortner, *JJ*.

*Robert A. Solomon*, for plaintiff.
*Gilbert Toll*, for defendant.
*Lynne Z. Gold*, for intervenor.

---

1. W. Shakespeare, *Troilus and Cressida*, IV, 5.

BODLEY, *J.*, May 9, 1978—We here consider defendant's exceptions to the report of the master and to his recommendation that a decree in annulment be entered for plaintiff. We find that the master has erred in his conclusions, hence sustain the exceptions to the master's report, and remand the matter to the master for further proceedings under the complaint in divorce a.v.m.

From the testimony offered before the master by plaintiff, defendant, and Corrine Silverman Kyle, defendant's first wife and self-styled "intervenor," we have gleaned the following facts. On August 29, 1959, defendant married Corrine Silverman Kyle in New York, New York. Their marital home was maintained in the Doylestown vicinity.

During the month of July, 1967, defendant employed plaintiff as his secretary in his New York office. Shortly thereafter, and while Corrine was pregnant with defendant's child, defendant and plaintiff entered into an open meretricious relationship. This relationship flourished, leading to plaintiff's moving from New York to Bucks County shortly after the birth of Corrine's child in November, 1967. From that point forward, until and after the divorce here challenged, plaintiff and defendant openly cohabited. Corrine and defendant separated some weeks prior to February 1, 1969.

Sometime before that date she had been advised that plaintiff was pregnant with defendant's child. Both plaintiff and defendant were anxious that defendant be divorced from Corrine so that they might marry before the birth of plaintiff's child, in order that it might be born under a cloak of legitimacy.

Corrine had previously advised defendant that she would seek a divorce if he continued his relationship with plaintiff, hence under the circum-

stances and as an accommodation to plaintiff and defendant, Corrine and defendant arranged to secure a Mexican divorce. Plaintiff was an active participant in making the arrangements. The divorce was secured on February 1, 1969, in the State of Chihuaha, Mexico, to which place they had travelled for that sole purpose.

Upon their arrival they went to the office of a lawyer with whom pre-arrangements had been made. Defendant paid the lawyer a fee on behalf of Corrine, ostensibly plaintiff in the action. A separate lawyer was retained by defendant. Corrine signed the "City Register" which, it appears, established a "residence" in that State under Mexican law. Together defendant and Corrine entered the court with their respective attorneys, after having first been counseled as to the nature of the proceedings which would follow. Certain testimony was presumably taken, documents signed, and at the conclusion of the proceeding a decree of divorce was entered by a Civil Judge of the State of Chihuaha. The parties left Mexico the same day and returned to their respective residences.

One month later, on March 3, 1969, plaintiff and defendant were married, their marriage license having been secured from the clerk of orphans' court of this county upon the strength of a certified copy of the Mexican divorce decree and a certified English translation thereof. The expected child was born in due time. One other child was born of this marriage. They lived together as man and wife for some seven years thereafter. There was little conflict in the testimony, and none which was material to the issue. Testimony offered by both plaintiff and defendant, as well as that received from Corrine, clearly demonstrates that plaintiff was

aware of defendant's intention to secure the Mexican divorce before he did so and that plaintiff was aware that she had entered into marriage with defendant on the strength of the Mexican divorce. That is not challenged. Plaintiff now seeks to have that marriage set aside and declared null and void by this court. We are of the opinion that she is estopped from doing so and may not now be the beneficiary of release from a marriage entered into and made colorably lawful by a foreign divorce contrived and brought about in large part by her own doing.

The master correctly concluded, in our opinion, that bona fide domicile remains an essential jurisdictional fact necessary for extraterritorial recognition of a foreign decree in divorce: Williams v. North Carolina, 325 U.S. 226 (1945); and that both physical presence in the jurisdiction and a then-present intent to permanently reside there are essential characteristics of domicile: Stottlemyer v. Stottlemyer, 458 Pa. 503, 329 A. 2d 892, 899 (1974); McCloskey v. McCloskey, 461 Pa. 267, 366 A. 2d 279, 280 (1975).

We are also satisfied that, as a general rule, in the absence of domicile by at least one of the parties, the decree will not be endowed with extraterritorial effect. The master cited Com. v. Doughty, 187 Pa. Superior Ct. 499, 144 A. 2d 521 (1958), for this principle. However, in that case a Mexican divorce was declared invalid under circumstances in which only the husband had appeared in Mexico and although his wife had furnished a power of attorney, it was found to have been the result of deception on the part of her husband.

We have examined all cases cited and agree with counsel that there is no case precisely on point in

the Pennsylvania appellate reports. That is to say, that we find no recorded appellate decision in which, as in this instant case, a plaintiff seeks to nullify a marriage made possible by a decree of divorce secured after both defendant and the prior spouse personally appeared in a foreign State, with counsel, to obtain such decree as an accommodation to plaintiff. While we do not decide that under other circumstances such a decree might not be properly declared invalid, we do decide that equitable considerations must bar this plaintiff from securing the annulment she seeks.

Unquestionably it has long been the public policy of this Commonwealth to encourage the matrimonial status and discourage divorce on other than legitimate grounds. That same public policy would, we believe, apply with equal force to the present situation. Under facts substantially similar to those at hand, courts in neighboring jurisdictions have adopted this position. See, e.g., Weise v. Hughes, 1 N.J. Super. Ct. 104, 62 A. 2d 695 (1948), in which a plaintiff who married upon the strength of a Mexican divorce decree which she had procured was estopped from denying the validity of such divorce when it was upon that very decree that her spouse had relied in marrying her. A Connecticut court reached the same conclusion. In Cocco v. Cocco, 23 Conn. Superior Ct. 275, 181 A. 2d 266 (1962), plaintiff sued for annulment alleging the invalidity of a foreign divorce which defendant had procured from his first wife. There the court held that plaintiff had no standing to attack the validity of the Mexican divorce decree, finding that she had knowledge of the same before it was rendered, and had no legally protected interest which could have been adversely affected by the decree at the time it was entered. As

stated in Goodloe v. Hawk, 113 F. 2d 753 (1940):

". . . [I]t can no longer be said that public policy requires non-recognition of all irregular foreign divorces. We have recognized that the interest of the state in many situations may lie with recognition of such divorces and preservation of remarriages rather than a dubious attempt to resurrect the original. From a pragmatic viewpoint, judicial invalidation of irregular foreign divorces and attendant remarriages, years after both events, is a less than an ineffective sanction against an institution whose charm lies in its immediate respectability. We think it may now be stated that the general public policy in this jurisdiction [District of Columbia], as judicially interpreted, no longer prevents application in annulment actions of the laches and estoppel doctrines in determining the effect to be given such divorce decrees."

In the present case, plaintiff's meretricious relationship with defendant, during which she had conceived a child, and which in the first instance brought about defendant's separation from Corrine, was the foundation upon which her marriage to defendant was constructed. In the course of that construction plaintiff participated in the instigation of the foreign divorce upon the strength of which Corrine Silverman Kyle has endured—or enjoyed, as the case may be—a single status since February 1, 1969.

It was that same foundation, laid by her and defendant, which has also permitted plaintiff to enjoy the social status of marriage—and of being known as Mary Giarrizzo "Kyle" from the date of her marriage on March 3, 1969, to present. Under these circumstances we have concluded that plaintiff

must be estopped from seeking dissolution of that marriage through this collateral attack upon the Mexican divorce.

## ORDER

And now, May 9, 1978, for the foregoing reasons, the exceptions to the master's report are sustained and the matter is remanded to the master for further proceedings upon plaintiff's complaint in divorce.